CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED Dville
AUG 08 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TONYA M. SIMBER, | CASE NO. 4:12CV00034 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security, | |
| Defendant. | By: B. Waugh Crigler U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 15, 2009 protectively-filed applications for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter DENYING the Commissioner's motion for summary judgment, GRANTING, in part, the plaintiff's motion for summary judgment, and REMANDING this case to the Commissioner for further proceedings.

In a decision dated January 27, 2011, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since September 1, 2008, her alleged

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin hereby is substituted for Michael J. Astrue as the defendant in this action.

date of disability onset.[2] (R. 21.) The Law Judge determined plaintiff's irritable bowel syndrome, back disorder, recurring MRSA infection, fibromyalgia, and anxiety were severe impairments. (R. 21.) He also concluded, based on the testimony of Dr. Charles Cooke, an impartial medical expert, that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 22.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform simple, unskilled light work that did not involve significant contact with the public. (R. 24.)

The Law Judge relied on the testimony of Andrew Beale, a vocational expert ("VE"). (R. 29-30, 64-65.) The Law Judge determined that plaintiff was not able to perform her past relevant work as a waitress or home attendant, but could perform other jobs existing in the national economy such as a motel maid. (R. 28-30, 64-65.) The Law Judge found plaintiff not disabled under the Act.

Plaintiff appealed the Law Judge's January 27, 2011 decision to the Appeals Council and submitted additional evidence. (R. 1-15.) In its July 24, 2012 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 5-6.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

[2] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which was June 30, 2010. *See* 20 C.F.R. § 404.131(a); (R. 21.) Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642.

Plaintiff seeks reversal or remand on three grounds. First, she asserts that the Commissioner failed to discharge her burden at the final level of the sequential evaluation. Second, she believes that the Law Judge improperly ignored some findings and failed to give proper weight to the findings of Marvin Gardner, M.D., a consultative examiner. Finally, plaintiff alleges that the Law Judge improperly assessed her credibility.

Plaintiff's alleged onset date is September 1, 2008. She received frequent treatment for diverse medical complaints, including a panic disorder, from her primary care physicians at Smith Mountain Lake Family Practice throughout the relevant period. (R. 551-557.) On September 16, 2008, Dr. Saadat, one of her physicians, denied refills of plaintiff's medications due to the risk of addiction and recommended psychiatry and pain management. (R. 557.) On September 22, 2008, plaintiff's Xanax prescription was refilled. (R. 557.) On September 30, 2008, plaintiff reported to Lewis-Gale Medical Center due to abdominal pain and vomiting. (R. 355.) A CT of plaintiff's abdomen showed that her appendix was within normal limits, and an ultrasound revealed a normal-appearing left ovary, though plaintiff's right ovary was not

3

identified. (R. 358.) Plaintiff was released with antibiotics but returned and was admitted to the hospital on October 1, 2008. (R. 430.) Plaintiff reported that she had five similar episodes, two of which resulted in hospitalization, in the last four years. (R. 430.) On October 4, 2008, plaintiff was treated by Merritt J. Bern, M.D., who diagnosed her with a right ovarian infection and constipation, which was confirmed by her abdomen x-ray. (R. 428.) Dr. Bern prescribed Miralax for her constipation and noted that her ovarian infection was improving on the combination of metronidazole and doxycycline. (R. 428-429.) On October 6, 2008, plaintiff was discharged from the hospital with instructions to continue her Xanax and Miralax daily with Tylenol and Lortab as needed for pain. (R. 434.)

On February 3, 2009, plaintiff returned to Lewis-Gale Medical Center complaining of abdominal pain, nausea, and vomiting with hematemesis (vomiting blood). (R. 438-439.) Brian J. Vanderlinden, M.D., examined plaintiff and diagnosed her with a possible Mallory Weiss tear (bleeding in the throat caused by vomiting). Dr. Vanderlinden opined that plaintiff's abdominal pain was likely caused by gynecologic issues rather than gastrointestinal. (R. 440.) Plaintiff was discharged from the hospital on February 5, 2009. On February 10, 2009, Patton Saul, M.D., performed a total abdominal hysterectomy and a right salpingo-oophorectomy to treat plaintiff's menometrorrhagia and right lower quadrant pain. (R. 447.) Plaintiff's left ovary was not removed, and the lab results revealed that the cyst on her right ovary was benign. (R. 451.) Plaintiff was discharged from the hospital on February 16, 2009. (R. 450.)

On March 26, 2009, plaintiff reported to Bedford Memorial Hospital complaining of intermittent abdominal pain since her surgery as well as pain with bowel movements and voiding and a rash on her abdomen. (R. 535.) A CT scan revealed a likely recently ruptured left ovarian cyst. (R. 500.) Plaintiff was prescribed naproxen and instructed to follow up with her primary

4

care physician. (R. 540.) On April 28, 2009, plaintiff returned to Lewis-Gale Medical Center complaining of left lower quadrant pelvic pain and was admitted for immediate surgery. (R. 456.) Plaintiff reported that she had experienced loose stools and urinary frequency since early March and every day pains with diarrhea and nausea since early April. (R. 456.) Dr. Saul performed a left salpingo-oophorectomy and diagnosed plaintiff with a ruptured left ovarian cyst but there was no evidence of malignancy. (R. 453.)

On July 26, 2009, plaintiff reported to Lynchburg General Hospital complaining of painful skin lesions on her buttocks and abdomen. (R. 465.) An examination revealed multiple ulcerated areas but no drainable abscesses. (R. 466.) Plaintiff was diagnosed with suspected community acquired MRSA (Methicillin-Resistant Staphylococcus aureus) and received a prescription with instructions to follow-up with her primary physician in one week. (R. 472.) On July 29, 2009, plaintiff returned to Bedford Memorial Hospital because she could not keep her antibiotics down due to vomiting. (R. 544.) Plaintiff was diagnosed with vomiting with nausea and prescribed phenergan. (R. 547.)

On March 16, 2010, plaintiff was admitted to Lynchburg General Hospital after complaining of a severe intractable headache. (R. 608.) Plaintiff was diagnosed with intractable migraine, folliculitis of the scalp, probable right arm neuropathy versus reflex sympathetic dystrophy, and constipation. (R. 608.) On March 17, 2010, plaintiff was examined by Octavio DeMarchena, M.D., a neurologist, who opined that her CT scan and MRI both appeared normal and that plaintiff most likely was suffering from a migraine. (R. 607.) Plaintiff was treated with Depakote and discharged on March 18, 2010. (R. 608.)

On March 19, 2010, Dr. Gardner performed a psychological consultative examination (CE) at the request of the Commissioner. (R. 579.) He opined that plaintiff could perform simple

5

and repetitive tasks and maintain regular attendance, but that she would have a marked work-related impairment of concentration, persistence, or pace. (R. 584.) He further revealed that plaintiff's panic attacks would take her off task for an hour each week, and that plaintiff would have moderate difficulty in working with coworkers and the public. (R. 584.) Dr. Gardner diagnosed plaintiff as suffering an adjustment disorder with depression and an anxiety disorder with panic attacks, with an estimated GAF of 56.[3]

On March 27, 2010, plaintiff returned to Lynchburg General Hospital complaining of a headache and vomiting. (R. 595.) She reported that she had stopped taking her Depakote and had not followed up with her primary care physician for financial reasons. (R. 597.) Plaintiff was instructed to follow up with a neurologist either at Lynchburg General Hospital or at UVA. (R. 601.) On April 27, 2010, she was evaluated by a neurologist, Charles Joseph, M.D., for pain which began in her right shoulder area and had migrated to her left knee with some swelling. (R. 632.) Dr. Joseph observed visible swelling of the sub-patella bursa, but he did not find any neurologic cause for her symptoms and opined that she either suffered fibromyalgia or inflammatory connective tissue disease. (R. 632.) Later that day, plaintiff returned to Lynchburg General Hospital complaining of pain. Plaintiff was instructed to follow up with Eric Kenny, M.D., a rheumatologist. (R. 592.)

On June 14, 2010, plaintiff was seen at the Orthopedic Center of Central Virginia by Mark McGuire, a physician's assistant who scheduled plaintiff for a right upper extremity nerve conduction study and recommended she see a GI specialist. (R. 725). Plaintiff was admitted to

---

[3] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM–IV). A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms...or moderate difficulty in social, occupational, or school functioning." DSM–IV at 32.

Lynchburg General Hospital later that day after complaining of rectal bleeding and abdominal pain which she reported starting four weeks earlier. (R. 654.) A CT scan of plaintiff's abdomen was unremarkable, but a colonoscopy revealed a patchy area of mildly erythematous musoca in the sigmoid colon. (R. 667-668, 677.) John Salmon, M.D., diagnosed that plaintiff likely suffered acute self-limiting colitis. (R. 675.) She was discharged from the hospital on June 16, 2010, and instructed to follow up with her primary care physician. (R. 648.) However, plaintiff again was admitted to Lynchburg General Hospital on July 14, 2010, due to rectal bleeding. (R. 697.) A small-bowel follow-through was attempted twice, but plaintiff became hysterical and the procedure could not be completed. (R. 698.) Plaintiff also refused to speak with mental health professionals. (R. 698.) She was diagnosed with abdominal pain of unclear etiology, rectal bleeding with normal hematocrit, chronic pain syndrome, narcotic dependence/abuse, depression, fibromyalgia, probable personality disorder with cluster B features, and tobacco abuse. (R. 697.) Plaintiff was discharged on July 16, 2010, with instructions to follow up with her primary care physician and with gastroenterology. (R. 697.)

On November 3, 2010, plaintiff returned to Lynchburg General Hospital complaining of abdominal pain. (R. 734.) After extensive testing with normal results, plaintiff was diagnosed with possible irritable bowel syndrome. (R. 734.) She was discharged on November 6, 2010 and instructed to follow up regularly with Matt Tatom, D.O. and Ralph Wisniewski, M.D. (R. 734.)

On December 2, 2010, W. Stephen Kelly, PhD, wrote a letter explaining that he had treated plaintiff since September 20, 2010. (R. 761.) Dr. Kelly diagnosed plaintiff as suffering an adjustment disorder with anxiety and noted that, in addition to her anxiety, she presented with symptoms of significant PTSD. (R. 761.) Dr. Kelly opined that plaintiff's disorder had existed for many years, and that while it could improve with time and treatment, she most likely would

7

remain impaired which would "severely hamper her efforts to work successfully outside of her home." (R. 761.)

At the conclusion of the hearing on December 3, 2010, the Law Judge left the record open for seven to ten days for the submission of additional evidence. (R. 65.) By letter dated December 8, 2010, Dr. Tatom, plaintiff's new primary care physician, stated that he had only examined plaintiff twice and would not feel comfortable filling out a medical questionnaire. (R. 764.) He further stated that any of plaintiff's physical restrictions could be best addressed by UVA, where he had referred her for her musculoskeletal problems. (R. 764.) On January 27, 2011, the Law Judge found that plaintiff was not disabled. (R. 30.)[4]

Plaintiff argues that the Commissioner did not discharge her burden at step five of the sequential evaluation because the Law Judge failed to pose hypothetical questions to the Vocational Examiner (VE) which described and accounted for all the limitations produced by plaintiff's impairments. *See Walls v. Barnhart*, 296 F.3d 287, 291 (4th Cir. 2002); *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989); *Hatcher v. Secretary, Dept. of Health and Human Services*, 898 F.2d 21, 24-25 (4th Cir. 1989). The Law Judge determined that plaintiff retained the residual functional capacity (RFC) for light work that was limited to simple, unskilled mental work tasks not involving significant contact with the public. (R. 24.) Neither this RFC nor any limitations accompanying it were hypothetically presented to or otherwise considered by the VE. (R. 64-65.) The Law Judge asked the VE to classify the plaintiff's prior work, which the VE noted was semi-skilled. (R. 64.) The Law Judge then asked the VE the exertional level of a motel maid, which was identified as light work. (R. 64.) Without further inquiry of the VE, the Law Judge directed his focus to the plaintiff by informing her of his notions of a motel maid's

---

[4] Plaintiff submitted additional evidence documenting her treatment from the period of January 2011 through April of 2012, largely consisting of plaintiff's treatment for seizures, which did not occur prior to the hearing and of which no doctor has determined the etiology. (R. 765-1189.)

job duties, and then asked whether she could do that kind of work. (R. 64.) The Law Judge then redirected his attention to the VE, asked how many of those jobs existed and confirmed that a person performing them was required to be "around bathrooms all day... ." (R. 65.) The VE's response was that 27,000 motel maid jobs exist in Virginia, that they are light and unskilled work, and that motel maids are, in fact, around bathrooms all day. (R. 65.) The VE did not address the degree to which such a worker would be exposed to the public or the extent to which the job would be available for a person who took eight or ten breaks a day for her bowel movements.

It is the undersigned's view that the vocational evidence fell short of addressing that which is required by the decisional authorities in this circuit. Both the Law Judge's RFC and his questions to the VE either were greatly influenced by the Law Judge's notions of the job requirements or failed to allow the VE to account for substantial evidence relating to the number of bathroom breaks required by plaintiff's bowel impairment. Though the court could simply find that the Commissioner failed to discharge her burden at step five of the sequential evaluation and award benefits, the undersigned believes that the better practice would be to remand the case to the Commissioner so she could more fully consider the final sequential inquiry concerning whether, in fact, there is alternate gainful activity which plaintiff, with her impairments and their vocational effects, could perform.

The plaintiff also alleges that the Law Judge failed to explain the weight given the evidence of Dr. Marvin Gardner, the Commissioner's own consultative examiner. Plaintiff points out that, while he credited Dr. Gardner's opinions concerning plaintiff's ability to perform simple tasks, he rejected his concurrent opinion that she suffered marked vocationally relevant limitations in concentration, persistence, and pace which was consistent with that offered by

9

plaintiff's treating sources such Drs. Kelly and Lewis. (Docket No. 15 at 16-18; R. 23-24; 554-556, 761.)

It is clear on this record that Dr. Gardner's opinion was premised the cognitive tests he performed. (R. 584.) As a result, he was of the view that plaintiff had markedly impaired recall and concentration, moderately impaired abstract thinking, mildly impaired long-term memory, and a poor fund of general information. (R. 583-584.) The Law Judge points to no evidence in the record that contradicts either Dr. Gardner's opinion or those of plaintiff's own treating sources, who believe her limitations are even greater.

While the Law Judge is not required to accept all of a treating or examining physician's opinions, nevertheless, he must explain his decision to discredit a portion of the doctor's opinion. Here, there is no evidence suggesting that plaintiff's concentration is not impaired as Dr. Gardner opined. In fact, the substantial weight of the evidence is that she suffers even greater limitations. Therefore, the Law Judge's decision to essentially "cherry pick" the evidence so as to justify his RFC is not supported by substantial evidence. Upon remand, the Commissioner must take into account the entirety of Dr. Gardner's opinion in determining plaintiff's RFC.

Plaintiff's final argument is that the Law Judge improperly assessed her credibility. Indeed, the undersigned is unable to discern the basis for the Law Judge's credibility finding. Although the Commissioner urges that the plaintiff's activities of daily living support the Law Judge's finding that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the RFC to perform light work, the Law Judge makes no reference to the activities that provide support for the Commissioner's position. (Doc. No. 17, at 20-21; R. 26.) The undersigned shares plaintiff's view that the Law Judge's decision lacks sufficient explanation for the Law Judge's credibility

finding. On remand, the Commissioner will have an opportunity to properly evaluate the credibility of plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms on her residual functional capacity.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING, in part, and DENYING, in part, the plaintiff's motion for summary judgment, DENYING the Commissioner's motion for summary judgment, and REMANDING the case to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

August 8, 2013
Date